UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ALEC SHEA, on Behalf of Himself and All Others Similarly Situated, | : <br> : Case No._____ <br> : |
| Plaintiff, | : **CLASS ACTION COMPLAINT FOR** <br> **VIOLATIONS OF THE FEDERAL** |
| vs. | : **SECURITIES LAWS** |
| CORINDUS VASCULAR ROBOTICS, INC., MARK J. TOLAND, JEFFREY C. LIGHTCAP, JEFFREY G. GOLD, CAMPBELL D. ROGERS, JAMES R. TOBIN, LOUIS A. CANNON, NATHAN R. HARRINGTON, and DOUGLAS L. BRAUNSTEIN, | : <br> : **JURY TRIAL DEMANDED** <br> : <br> : |
| Defendants. | : <br> : |

---

Plaintiff Alec Shea ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Class Action Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Corindus Vascular Robotics, Inc. ("Corindus" or the "Company") against Corindus and the members of Corindus' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Corindus will be acquired by Siemens Healthineers AG

("Healthineers") through its primary U.S. operating subsidiary Siemens Medical Solutions USA, Inc. ("Siemens") and Siemens' wholly owned subsidiary Corpus Merger, Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On August 8, 2019, Corindus issued a press release announcing that it had entered into an Agreement and Plan of Merger dated August 7, 2019 (the "Merger Agreement") to sell Corindus to Healthineers.  Under the terms of the Merger Agreement, each Corindus stockholder will receive $4.28 in cash for each share of Corindus common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $1.1 billion.

3.     On August 30, 2019, Corindus filed a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Corindus stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Corindus' financial projections, relied upon by the Company's financial advisor, Citigroup Global Markets Inc. ("Citi"), in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Citi; and (iii) Company insiders' and Citi's potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In short, unless remedied, Corindus' public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Corindus' common stock trades on the NYSE American, which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Corindus.

9. Defendant Corindus is a Delaware corporation, with its principal executive offices located at 309 Waverley Oaks Road, Suite 105, Waltham, Massachusetts 02452. The Company is engaged in the design, manufacture and sales of precision vascular robotic-assisted systems for use in interventional vascular procedures. Corindus' common stock trades on the NYSE American under the ticker symbol "CVRS."

10. Defendant Mark J. Toland ("Toland") has been President, Chief Executive Officer ("CEO") and a director of the Company since March 2016.

11. Defendant Jeffrey C. Lightcap ("Lightcap") is Chairman of the Board and has been a director of the Company since August 2014. From March 2008 to August 2014, defendant Lightcap served as a director of Corindus, Inc. Since mid-2016, defendant Lightcap has also served as a Senior Managing Director at HealthCor Partners Management, LP ("Healthcor"), the Company's largest stockholder which owns approximately 25% of the outstanding voting power of Corindus capital stock.

12. Defendant Jeffrey G. Gold ("Gold") has been a director of the Company since August 2014. From February 2011 to August 2014, defendant Gold served as a director of Corindus, Inc.

13. Defendant Campbell D. Rogers ("Rogers") has been a director of the Company since February 2016.

14. Defendant James R. Tobin ("Tobin") has been a director of the Company since March 2018.

15. Defendant Louis A. Cannon ("Cannon") has been a director of the Company since March 2017.

16. Defendant Nathan R. Harrington ("Harrington") has been a director of the Company since June 2017.

17. Defendant Douglas L. Braunstein ("Braunstein") has been a director of the Company since March 2018.

18. Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19. Healthineers, headquartered in Munich, Germany, is a leader in medical technology, constantly innovating its portfolio of products and services in its core areas of

diagnostic and therapeutic imaging and in laboratory diagnostics and molecular medicine. Healthineers enables and empowers healthcare providers worldwide to expand precision medicine, transform care delivery, improve patient experiences and digitalize healthcare. At the end of its most recent fiscal year on September 30, 2018, Healthineers generated revenue of €13.4 billion and adjusted profit of €2.3 billion and had approximately 50,000 employees worldwide.

20. Siemens is a Delaware corporation, an indirect wholly owned subsidiary of Healthineers, and is a primary U.S. operating subsidiary of Healthineers. Siemens' principal executive offices are located at 40 Liberty Boulevard, Malvern, Pennsylvania 19355. Siemens provides medical diagnostic equipment and healthcare technology to public and private customers in the United States.

21. Merger Sub is a Delaware corporation and wholly-owned subsidiary of Siemens.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Corindus common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

23. Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

24. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of August 30, 2019, there were approximately 208,665,310 shares of Company common stock outstanding. All members of the Class may be identified from records maintained by Corindus or

its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

25. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

    a) Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

    b) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

    c) Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

26. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

27. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

28. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

29. Corindus designs, manufactures, and sells robotic-assisted systems for use in interventional vascular procedures in the United States and internationally. The Company's CorPath platform is the first U.S. Food and Drug Administration ("FDA")-cleared medical device

to bring robotic precision to percutaneous coronary and vascular procedures. CorPath GRX is the second-generation robotic-assisted technology offering enhancements to the platform by adding important key upgrades that increase precision, improve workflow, and extend the capabilities and range of procedures that can be performed robotically. The Company sells its products through a direct sales force, as well as through distributor and partnership relationships. It serves vascular, coronary, peripheral vascular, neurointerventional, and structural heart markets.

30.     On May 7, 2019, Corindus announced its first quarter 2019 financial results, reporting revenue of $3.0 million, including sale and installation of nine CorPath GRX Systems, compared to revenue of $1.5 million during the first quarter of 2018. The Company recorded purchase orders for 11 CorPath GRX Systems, an increase of 83% compared to purchase orders received in the fourth quarter of 2018 and 267% growth compared to the purchase orders received in the first quarter of 2018. Defendant Toland commented on the positive results, stating:

> We are pleased with the positive trends in adoption and usage of our robotic technology during the first quarter of 2019. The eleven purchase orders for the CorPath GRX System received and a record number of disposable cassettes in the quarter reflect our continued momentum. Customers are also increasingly opting for service agreements, reflecting their commitment to robotic procedures over the long-term . . . .
>
> We continue to build out our global footprint with new installations in Japan and Europe and believe the addition of CE mark for neurovascular treatment will enable us to expand our opportunities in the European markets. Ongoing demonstrations at multiple medical conferences continue to drive demand, as physicians and hospital administrators increasingly embrace the power of robotics today, with potential to overcome geographic disparities through access to life-saving interventions tomorrow. 2019 is shaping up to be an exciting year of growth for Corindus . . . .

**The Proposed Transaction**

31.     On August 8, 2019, Corindus issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

WALTHAM, Mass., — August 8, 2019 — Corindus Vascular Robotics, Inc. [NYSE American: CVRS], a leading developer of precision vascular robotics, today announced that it has entered into a definitive merger agreement to be acquired by Siemens Healthineers AG. Under the terms of the merger agreement, Siemens Medical Solutions, a wholly-owned subsidiary of Siemens Healthineers AG, a German stock listed company, will acquire all issued and outstanding shares of common stock of Corindus for $4.28 per share in cash, representing an aggregate purchase price of approximately $1.1 billion.

"We are pleased to have reached this agreement with Siemens Healthineers," said Mark J. Toland, President and Chief Executive Officer of Corindus. "We believe the transaction will deliver immediate, compelling and certain value to all Corindus stockholders, as well as substantial benefits to our customers. The combination of Siemens Healthineers' advanced, high-quality imaging, digital and artificial intelligence tools with Corindus' precision robotics platform has the potential to transform the way healthcare is delivered to those suffering from cardiovascular or peripheral disease. The tremendous technology synergies and shared vision between both companies should allow us to achieve a seamless integration between our businesses."

"Corindus has established a leading position in vascular robotics with a compelling technology platform for robotic-assisted coronary, peripheral, and neurovascular procedures," said Michel Therin, President, Advanced Therapies at Siemens Healthineers. "The acquisition of Corindus, combined with Siemens' strong advanced therapies portfolio will help further advance the growth of vascular robotics. The integration of our technologies could lead to reduced variability, improved efficiency, expanded access to care, and ultimately improved patient outcomes. We look forward to welcoming the Corindus team to Siemens Healthineers."

The transaction has been approved by the Board of Directors of Corindus and is expected to close in the fourth quarter of 2019, subject to approval by Corindus stockholders, the expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and the satisfaction of other customary closing conditions.

**Insiders' Interests in the Proposed Transaction**

32.    Corindus insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Corindus.

33. Notably, Corindus insiders stand to reap substantial financial benefits for securing the deal with Healthineers. Pursuant to the Merger Agreement, all outstanding stock options and restricted stock units ("RSUs") will vest and convert into the right to receive cash payments. The following table summarizes the value of the stock options and RSUs Company insiders stand to receive:

| Executive Officer | Vested Corindus Options (#) | Unvested Corindus Options (#) | Value of Vested Corindus Options ($) | Value of Unvested Corindus Options ($) | Total Value of Corindus Options (Vested and Unvested) ($) |
|---|---|---|---|---|---|
| Mark J. Toland<br>*President and Chief Executive Officer* | 11,320,792(1) | 2,187,919(1) | 35,357,826 | 7,089,843 | 42,447,669 |
| David W. Long<br>*Senior Vice President and Chief Financial Officer* | 1,061,010 | 234,811 | 3,767,076 | 729,498 | 4,496,574 |
| Douglas Teany<br>*Chief Operating Officer* | 616,127 | 758,873 | 2,028,490 | 2,466,860 | 4,495,350 |
| **Total** | **12,997,929** | **3,181,603** | **41,153,392** | **10,286,200** | **51,439,593** |

34. Moreover, if they are terminated in connection with the Proposed Transaction, Corindus' named executive officers stand to receive substantial cash severance payments as set forth in the following table:

**Golden Parachute Compensation**

| Name | Cash(1) ($) | Equity(2) ($) | Perquisites / Benefits(3) ($) | Total(4) ($) |
|---|---|---|---|---|
| Mark J. Toland | 3,287,500 | 7,089,843 | 29,000 | 10,406,343 |
| David W. Long | 510,948 | 729,498 | 29,000 | 1,269,446 |
| Douglas Teany | — | 2,466,860 | — | 2,466,860 |
| **Total** | **3,798,448** | **10,286,200** | **58,000** | **14,142,648** |

## The Proxy Statement Contains Material Misstatements or Omissions

35. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Corindus' stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

36. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Corindus' financial projections, relied upon by the Company's financial advisor,

Citi, in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Citi; and (iii) Company insiders' and Citi's potential conflicts of interest.

*Material Omissions Concerning Corindus' Financial Projections*

37. The Proxy Statement omits material information regarding the Company's financial projections provided by Corindus' management and relied upon by Citi for its analyses.

38. For example, in connection with Citi's *Discounted Cash Flow Analysis ("DCF")*, the Proxy Statement sets forth:

> Citi conducted a discounted cash flow analysis for Corindus, which is an analysis designed to estimate an implied value of a company by calculating the present value of the estimated future unlevered after-tax free cash flows of that company over a projection period and a terminal value for that company at the end of the projection period.
>
> Citi conducted this analysis for Corindus using estimates of the unlevered free cash flows that Corindus is expected to generate during the period from July 1, 2019 through December 31, 2024, that were calculated by Citi based upon the Financial Projections by taking net operating profit after tax, adding depreciation and amortization, adjusting for changes in net working capital, subtracting capital expenditures and treating stock-based compensation as a cash expense.

Proxy Statement at 54. The Proxy Statement, however, fails to set forth Corindus' unlevered, free cash flows ("UFCFs") that Corindus is projected to generate during the period from July 1, 2019 through December 31, 2024 utilized by Citi in its DCF, as well as the underlying line items, including (i) net operating profit after tax; (ii) depreciation and amortization; (iii) changes in net working capital; (iv) capital expenditures; and (v) stock-based compensation.

39. The omission of this information renders the statements in the "Financial Projections" and "Opinion of Citigroup Global Markets Inc." sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Citi's Financial Analyses*

40. The Proxy Statement describes Citi's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Citi's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Corindus' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citi's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

41. With respect to Citi's *DCF*, the Proxy Statement fails to disclose: (i) the UFCFs that Corindus is projected to generate during the period from July 1, 2019 through December 31, 2024, as well as the estimated terminal year UFCF, and all underlying line items; (ii) the benefits estimated to be derived from Corindus' net operating losses; (iii) the estimated terminal values for Corindus; and (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 10.9% to 13.0%.

42. With respect to Citi's *Selected Companies Analysis* and *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies and transactions analyzed by Citi, respectively.

43. Without such undisclosed information, Corindus stockholders cannot evaluate for themselves whether the financial analyses performed by Citi were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Citi's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

44.     The omission of this information renders the statements in the "Opinion of Citigroup Global Markets Inc." and "Financial Projections" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' and Citi's Potential Conflicts of Interest***

45.     The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Corindus insiders.

46.     In the August 8, 2019 press release announcing the Proposed Transaction, Michel Therin, President, Advanced Therapies at Healthineers, was quoted as stating:

> The acquisition of Corindus, combined with Siemens' strong advanced therapies portfolio will help further advance the growth of vascular robotics. The integration of our technologies could lead to reduced variability, improved efficiency, expanded access to care, and ultimately improved patient outcomes. **We look forward to welcoming the Corindus team to Siemens Healthineers.**

Emphasis added.

47.     Yet, the Proxy Statement fails to disclose whether any members of Corindus management are continuing with the combined company, and the details of any employment and retention-related discussions and negotiations that occurred between Healthineers or Siemens and Corindus executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Healthineers or Siemens' prior proposals or indications of interest mentioned management retention or equity participation in the combined company.

48.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of

management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

49. The Proxy Statement also fails to disclose material information concerning the potential conflicts of interest faced by Citi.

50. The Proxy Statement sets forth:

> Citi and its affiliates in the past have provided and in the future may provide certain investment banking, commercial banking and other financial services to ***Siemens AG***, the majority shareholder of Healthineers, ***and affiliates of Siemens AG*** unrelated to the proposed merger, for which services Citi and its affiliates have received and expect to receive compensation, including, during the two-year period prior to the date of Citi's opinion, having acted or acting as joint bookrunner in connection with the initial public offering of Healthineers by Siemens AG; and as lead arranger, administrative agent and/or bookrunner in connection with certain investment grade loans and investment grade bond issuances of Siemens AG. **For the services described above for *Corindus*, Citi and its affiliates received during the two-year period prior to the date of Citi's opinion aggregate fees of approximately $12 million**.

*Id.* at 55. The Proxy Statement discloses the details of the services Citi provided to Siemens AG and its affiliates during the two-year period prior to Citi's opinion, and the aggregate fees Citi received for services provided to Corindus. The Proxy Statement, however, fails to and must disclose the aggregate fees Citi received from Siemens AG and its affiliates for the services set forth on page 55 of the Proxy Statement, or clarify that Citi received aggregate fees of approximately $12 million for the services provided to Siemens AG and its affiliates, not Corindus. The Proxy Statement must further disclose the details of any services Citi has provided to the Company in the past two years, and any fees received by Citi for such services provided to Corindus.

51. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection and implementation of strategic alternatives.

52. The omission of this information renders the statements in the "Background of the Merger," "Interests of Corindus' Executive Officers and Directors in the Merger," and "Opinion of Citigroup Global Markets Inc." sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

53. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

54. Plaintiff repeats all previous allegations as if set forth in full.

55. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

56. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the financial projections utilized by the Company's financial advisor in connection with its financial analyses, the financial

analyses performed by the Company's financial advisor, and potential conflicts of interest faced by Company insiders and the Company's financial advisor. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

57. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

58. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

59. Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

60. Plaintiff repeats all previous allegations as if set forth in full.

61. The Individual Defendants acted as controlling persons of Corindus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Corindus, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

62. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

64. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

65. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

66. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Corindus' stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Corindus, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Corindus stockholders;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 25, 2019

**WEISSLAW LLP**

By _____
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*